IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MATTHEW H.,[1]

      Plaintiff,

v.                                                 Civ. No. 23-759 MIS/SCY

MARTIN O'MALLEY,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff argues that the Commissioner committed error in weighing the evidence when denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Because I find that Plaintiff identifies no reversible error in the decision below, I recommend the Court DENY Plaintiff's Motion to Remand or Reverse, Doc. 21, and affirm the decision below.[2]

## APPLICABLE LAW

A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] The Honorable Margaret I. Strickland referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 15. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). I reserve discussion of the background, procedural history, and medical records relevant to this appeal for my analysis.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. <u>Standard of Review</u>

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## **ANALYSIS**

Plaintiff makes a number of allegations of error which I group into three categories: (1) the RFC lacks substantial evidence because the ALJ rejected all of the medical opinions; (2) the ALJ committed legal error when evaluating many of the medical opinions; and (3) the ALJ erred

4

in evaluating a third-party function report.[4] Because Plaintiff identifies no reversible error of law and does not show that the decision below lacks substantial evidence, I recommend the Court affirm.

I.  **Substantial Evidence**

Plaintiff contends that substantial evidence cannot support a decision where the ALJ rejects every medical opinion in the file. More specifically, Plaintiff argues that, having rejected the opinions of the state agency nonexamining consultants, the ALJ was not permitted to also reject all the opinions from the remaining medical providers (Doctors Sartorius, Munoz and Gzaskow and LCSW Temple). Doc. 22 at 10.

The premise of this argument is incorrect: an ALJ is not required to match the RFC to a medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Substantial evidence supports the ALJ's opinion as long as there is "more than a scintilla" of objective medical evidence in the record—such as the course of medical treatment or function reports or Plaintiff's own testimony or work history. The ALJ is not required to adopt any specific medical opinion.

Plaintiff argues the ALJ "may not 'pick and choose' evidence supporting a finding of non disability." Doc. 22 at 10. While Plaintiff accurately quotes from a published Tenth Circuit

---

[4] Plaintiff also implies that the second ALJ decision (the decision currently on appeal) should not have altered the RFC unfavorably as compared to the first ALJ decision rendered in this case. Doc. 22 at 3-5 & nn.2-3. To the extent Plaintiff is arguing that law of the case prevented the ALJ from revisiting the RFC, that is incorrect. The district court's opinion reversing the first ALJ decision stated that it "only addresse[d] the fourth issue presented, in the interest of judicial efficiency, *as the Administration may choose to revisit the others on remand*." AR 453 (emphasis added). Fashioning a new RFC on remand did not violate this mandate. To the extent Plaintiff intended to raise additional legal arguments related to this issue, I decline to address them for lack of sufficient briefing with citation to authorities on the topic.

decision, Plaintiff takes the quote out of context. In *Haga v. Astrue*, a state agency examining psychological consultant "fill[ed] out a mental RFC form, on which he marked appellant moderately impaired in seven out of ten functional categories." 482 F.3d 1205, 1207 (10th Cir. 2007). Although the ALJ's RFC incorporated three of these moderate limitations, it did not incorporate the other four. *Id*. Further, the ALJ did not provide an explanation for rejecting the remaining four moderate limitations and "the evidence on which the ALJ explicitly relied in his decision [did] not imply an explanation." *Id*. On appeal, the Tenth Circuit noted "it is simply unexplained why the ALJ adopted some of [the doctor]'s restrictions but not others." *Id.* at 1208. Although an "ALJ is entitled to resolve any conflicts in the record," the court stressed that an ALJ must actually identify the evidence that conflicts with the doctor's medical opinion or RFC assessment. *Id*. "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Id*.

In short, *Haga* is a rule of articulation, not substance. An ALJ may certainly rely on evidence unfavorable to disability to render his opinion, but the ALJ must articulate that evidence and explain why it contradicts the medical opinion. In this case, Plaintiff develops no argument related to articulation and does not contend that the medical opinions the ALJ rejected are uncontradicted. *Haga* does not mandate reversal simply due to the mere fact that the ALJ rejected the medical opinions.

Finally, Plaintiff argues that after the rejection of the medical opinions, "the ALJ is left with no objective medical evidence" on which to support his decision. Doc. 22 at 11. But a medical opinion is not the only type of medical evidence that can establish the sufficiency of an ALJ's decision. As the Commissioner points out, the ALJ discussed the following evidence that supported his decision:

6

[I]n April 2017, x-rays of Plaintiff's low back showed degenerative disc disease and facet arthropathy, described as "quite mild" (Tr. 313). That same month, Dr. Gzaskow noted Plaintiff was usually cautious with people initially and phobic to crowds, but could walk away from conflict (Tr. 314, 317). Dr. Gzaskow found that he was alert, oriented, cooperative, and neatly dressed, and had excellent eye contact; good grooming, insight, and judgment; speech logical in form with regular rate; at least average intellectual functioning and fund of knowledge; intact calculations and abstractions; no problems with organic or psychotic pathology, recall, or recent or remote memory; and only "slightly" tense posture and psychomotor activity (Tr. 317).

Also in April 2017, Dr. Guerrero found that Plaintiff appeared clean, well-groomed, and calm (Tr. 323). He could bend around while seated to remove and replace socks and shoes and flex his legs at the hips to bring his feet up to knee level to replace shoes (Tr. 323). He could get up and out of a chair, get on and off the examination table, and ambulate without difficulty (Tr. 323). He also had a normal gait and reflexes; negative straight leg raising tests; ability to walk on his heels, tandem/heel walk and bend over and touch his toes; full grip and motor strength and ranges of motion in all extremities; and intact sensation (Tr. 324-25). Dr. Guerrero said Plaintiff had no limitations on his abilities to stand, sit, walk, bend, stoop, reach, lift, carry, see, remember, or understand (Tr. 325). She also said Plaintiff ambulated without difficulty or the need for an assistive device (Tr. 325). In May and August 2017, Drs. Sorensen, Post, Lev, and Holly, the State agency physicians, and psychologists, reviewed the evidence, and found that Plaintiff did not have even a severe physical or mental impairment (Tr. 68-78, 80-91).

As the ALJ discussed (Tr. 394), in September 2017, Dr. Sartorius found Plaintiff was alert and oriented and had a normal gait, bilateral lower extremity strength, straight leg raising tests, and sensation, and only "mild" low back tenderness (Tr. 361). As the ALJ also discussed (Tr. 394), in October 2018, Dr. Sartorius found Plaintiff was alert, cooperative, and only "mildly" obese and had intact muscle strength and sensation; normal reflexes; negative straight leg raising tests; appropriate affect; and grossly intact cognition (Tr. 334). As the ALJ further discussed (Tr. 394-95), in February 2019, Dr. Sartorius found Plaintiff had full strength in all muscle groups and extremities and was alert and oriented with good eye contact, appropriate thought content, and logical and goal-directed affect (Tr. 350). And, as the ALJ pointed out, in April 2019, Dr. Muñoz found Plaintiff was alert, fully oriented, cooperative, and appropriately groomed, and had good eye contact; adequate rapport, average intellectual functioning; and no abnormalities of thought or speech, hallucinations, or delusions (Tr. 379).

Most notably, and as the ALJ discussed (Tr. 391-97), the record was replete with Plaintiff's reports of work activity during the period at issue, which undermined his subjective complaints of disabling symptoms. In April 2017, Plaintiff reported he was five weeks into a training program for a job with a cable company (Tr. 315). In October 2018, he reported he just found a part-time job at Hobby Lobby

> in the framing department (Tr. 334). In February 2019, he told Dr. Sartorius he still worked at Hobby Lobby (Tr. 349). In April 2019, he reported, again, to Dr. Muñoz that he worked part-time at Hobby Lobby (Tr. 378). At the May 2019 administrative hearing, Plaintiff testified to working part-time at Hobby Lobby (Tr. 45). . . .
>
> As the ALJ also discussed, Plaintiff's activities of daily living undermined his subjective complaints (Tr. 391-97). Plaintiff himself said in February 2017 that he took care of his children, prepared his own meals, washed laundry and dishes, dusted, made beds, vacuumed, went outside three times per day, rode in cars, shopped in stores once a week for a couple of hours, watched the news, read, visited his mother a couple of times per week, and went to church (Tr. 226-33, 235-42). At the May 2019 administrative hearing, Plaintiff testified that he lived with and took care of his two children (Tr. 42). He said he had a driver's license and drove to the hearing that day (Tr. 46).

Doc. 26 at 13-16. Plaintiff does not acknowledge any of this discussion, let alone explain why it does not constitute objective evidence that supports the ALJ's RFC.[5] I conclude Plaintiff does not show that the decision below lacks substantial evidence.

## II. Medical opinions[6]

### A. Dr. Sartorius

The ALJ gave little weight to Dr. Sartorius' opinions on the ground that his examination of the claimant was inconsistent with his own opinion. Doc. 22 at 11; AR 396.[7] Plaintiff argues that Dr. Sarorius's treatment notes actually do support his opinion. Doc. 22 at 11 (citing AR 361). But the only evidence Plaintiff cites in support of this contention is a page from the record that consists of statements Plaintiff made during a doctor visit—not findings by the doctor. AR

---

[5] Plaintiff opted not to file a reply brief.

[6] Plaintiff filed his application for benefits on February 13, 2017. AR 165-66. The new rules stating how the administration considers medical opinion evidence took effect for applications filed after March 27, 2017. 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Therefore, they do not apply to this case.

[7] Plaintiff does not challenge whether this is a legitimate factor an ALJ may consider in rejecting a treating physician's opinion. The Court limits its analysis to the arguments Plaintiff does raise.

8

361. The ALJ considered Plaintiff's statements and other subjective symptom reports and explained why he did not fully adopt all the claimed limitations. AR 396-97. Plaintiff does not develop an argument on appeal of error related to subjective symptom statements. Therefore, I find that Plaintiff has not identified any error in the ALJ's evaluation of Dr. Sartorius's opinion.

### B. Dr. Gzaskow

Plaintiff argues that, in the course of the ALJ's evaluation of Dr. Gzaskow's opinion, the ALJ erred by failing to discuss

> Dr. Gzaskow's observation that [Plaintiff's] "mood was depressed with a sad and flattened affect," and "phobic to crowds," nor Dr. Gzaskow's conclusions that, inter alia, "Plaintiff can relate to others but this often compromised by his mood disorder secondary to chronic pain."

Doc. 22 at 14.

However, the ALJ's opinion includes a discussion of the exact language Plaintiff claims he left out. AR 395 ("Dr. Gzaskow opined the claimant could relate to others but that was often compromised by his mood disorder secondary to chronic pain syndrome."). In other words, the ALJ recognized that Dr. Gzaskow found a disorder relating to Plaintiff's mood and assessed limitations on his ability to relate to other people. The ALJ also explained why he rejected this opinion. Rather than challenging the sufficiency of ALJ's explanation, however, Plaintiff's argument is that the ALJ failed to consider certain information. Because this is simply a misstatement of the record (the ALJ did consider what Plaintiff claims he did not consider), the Court rejects Plaintiff's argument.

### C. Dr. Munoz

Plaintiff contends that the ALJ did not give sufficient reasons for rejecting the opinion of Dr. Munoz. The ALJ stated only Dr. Munoz opined that "the claimant could not sustain full-time employment at that time" and that the ALJ would not consider the opinion because "[t]he issue

9

of work capability is an issue reserved to the Commissioner," with no further analysis or reasons given. AR 396. Indeed, as Plaintiff notes, the Commissioner's rules state that "We will not consider an entire document to be a statement on an issue [reserved] to the Commissioner simply because the document contains a statement on an issue that is reserved to the Commissioner." 82 Fed. Reg. 5,844, at 5,851. Therefore, Plaintiff argues, the ALJ committed error by rejecting Dr. Munoz's opinion solely on grounds that work capability is an issue reserved for the Commissioner.

Although Plaintiff states the law correctly, there is no error here. Dr. Munoz's opinion does not include any limitations regarding Plaintiff's functioning other than the general statement that Plaintiff cannot work full-time. AR 382. There was therefore nothing else for the ALJ to evaluate in considering Dr. Munoz's opinion about Plaintiff's functional limitations. *Cf. Miller v. Commissioner, SSA*, No. 23-4034, 2024 WL 2844676, at *6 (10th Cir. June 5, 2024) ("That is entirely appropriate given that there is nothing in Dr. Ririe's report that is relevant to th[e ALJ's] analysis—he diagnosed Ms. Miller's mental health issues and concluded she would benefit from counseling and medication, but he did not assess her functional workplace limitations."). That is, when it comes to Dr. Munoz, the ALJ discussed all there was to discuss about work-related functioning—the single general statement Dr. Munoz made on this topic. And, the ALJ's rejection of Dr. Munoz's general opinion on this topic (a topic which is reserved for the Commissioner), did not cause the ALJ to reject anything else Dr. Munoz did say. To the extent Plaintiff implies that the ALJ failed to discuss or reject something else Dr. Munoz said, Plaintiff does not identify what else Dr. Munoz said that the ALJ should have discussed.[8]

---

[8] To be sure, Dr. Munoz also recorded clinical observations and discussed the result of various tests. For example, he stated that "[t]he claimant was basically a socially isolated individual who

**III.     Third-party function report**

Plaintiff argues the ALJ failed to properly evaluate the function report of Mr. Montez, Plaintiff's uncle, who stated that Plaintiff was very limited due to back pain; couldn't sit in the same position long; and was limited in lifting, squatting bending, standing reaching, sitting, kneeling stair climbing, and completing tasks. AR 220. Plaintiff argues that the ALJ did not follow the applicable legal standards in evaluating this report. Doc. 22 at 15-17.

SSR 16-3P provides that, in evaluating non-medical symptom evidence, "The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." 2017 WL 5180304, at *7 (Oct. 25, 2017). Similarly, SSR 06-03P stated:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

2006 WL 2329939, at *6 (Aug. 9, 2006).[9]

The ALJ here complied with this standard. He considered Mr. Montez's function report and stated that he rejected its contents for the same reasons the ALJ rejected Plaintiff's own subjective system testimony. AR 396 ("It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit h[is] functional abilities.

---

was distrustful of others and felt very uncomfortable in social situations." AR 382. These are medical observations the ALJ both considered and discussed in the narrative portion of his opinion. AR 395. Plaintiff does not challenge the ALJ's consideration of Dr. Munoz's recorded clinical observations or his discussion of the results of various tests.

[9] SSR 06-03p elaborated on the standard for evaluating non-acceptable medical sources under the pre-March 2017 version of the applicable regulations.

Ultimately, this statement is not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly consistent with the evidence.").

Plaintiff argues that the ALJ should have acknowledged that Dr. Sartorius reached similar conclusions as Mr. Montez, Doc. 22 at 15, but the ALJ did discuss Dr. Sartorius's conclusions. AR 396. He therefore was clearly aware of any similarities. There is no legal requirement that the ALJ explicitly say so. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Next, Plaintiff complains that the ALJ did not specifically identify the conflicting medical evidence when discussing the function report. Doc. 22 at 16. But an ALJ is not required to repeat an earlier discussion of the medical evidence when evaluating an opinion or report. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion."); *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018) ("While Mr. Webb takes issue with the ALJ's general reference to medical records 'all discussed above,' in this case it is not difficult to determine what [evidence] the ALJ relied upon." (citation omitted)). It is sufficient if the Court "can follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Here, as quoted above, *supra* pp. 7-8, the ALJ identified medical and other evidence which supported the RFC and therefore was inconsistent with the third-party function report. The ALJ cited and discussed this medical evidence in the narrative portion of his opinion; he was not required to repeat it when discussing the third-party function report.

Finally, Plaintiff argues that the ALJ erred by considering an improper factor in weighing the function report. AR 396 ("Further, it is potentially influenced by loyalties of family."). There is disagreement in this circuit as to whether "family loyalties," in the absence of other factors casting doubt on a claimant's credibility, is a proper consideration for the ALJ to articulate in evaluating a lay witness statement. *Compare Croley v. Colvin*, No. 12cv1101, 2013 WL 615564, at \*6 (D. Kan. Feb. 19, 2013) (the finding that a third-party report is "based upon loyalties of family" is one of "the two factors specifically recommended by SSR 06-03p for evaluating lay opinions: 'the nature and extent of the relationship'"), *with Langley v. Kijakazi*, No. 21cv178, 2022 WL 2681436, at \*6 (D.N.M. July 12, 2022) (in mentioning that the father's report was "potentially influenced by loyalties of family," the ALJ "applied a standard not contemplated by SSR 16-3p"), *report and recommendation adopted*, 2022 WL 2982780 (D.N.M. July 28, 2022).

The Court need not decide whether it was proper for the ALJ to discount testimony from Plaintiff's uncle based on concerns about family loyalty. This is because, even if concerns about family loyalty do not provide a basis for discrediting a family member's testimony, the ALJ did not discount the testimony from Plaintiff's uncle on the basis of family loyalty alone. Instead, the ALJ had an independently sufficient reason to discount the testimony of Plaintiff's uncle. Namely, the ALJ stated: "It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit h[is] functional abilities. Ultimately, this statement is not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly consistent with the evidence." AR 396. (This evidence is discussed *supra*, pp. 7-8.)

This distinguishes the present case from *Langley*, the unpublished district court decision on which Plaintiff rests his argument, Doc. 22 at 16-17, as well as the unpublished Tenth Circuit

decision which *Langley* cites as authority, *Panas on behalf of M.E.M. v. Comm'r, SSA*, 775 F. App'x 430 (10th Cir. 2019). Although both *Panas* and *Langley* did opine that the "family loyalties" language is improper, they also found that no other legitimate reasons supported the ALJ's evaluation of the third-party report. *Langley*, 2022 WL 2681436, at *6 ("The ALJ's reasons for rejecting the father's testimony are not supported by substantial evidence."); *Panas*, 775 F. App'x at 440 ("the ALJ did not explain how the medical evidence conflicted with the father's observations"). In this case, by contrast, even if the ALJ should not have discounted Plaintiff's uncle's testimony based on concerns about family loyalty, the medical evidence that conflicted with Plaintiff's uncle's testimony constituted an independently sufficient reason to discount Plaintiff's uncle's testimony. Accordingly, Plaintiff has not shown that the ALJ's decision to reject this testimony was unsupported by substantial evidence.

## CONCLUSION

For the reasons stated above, I recommend Plaintiff's Motion to Reverse or Remand be **DENIED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**